Good morning, Your Honors. My name is Patrick Griffin. I'm with the law firm of Kutak Rock, and I'm here this morning on behalf of the appellates in this matter, Mr. Robert McChesney, in his official capacity as the treasurer of Bart McClay for U.S. Senate, Inc., and Bart McClay for U.S. Senate, Inc. I have reserved three minutes for rebuttal, if I may. When I stepped into this case and I read the court's opinion below and the briefs which had been filed previously, trying as best as I could to get a feel for the issues that had been brought to this court, I kept returning to a single issue that I think defines the matter. As you know, we are here in consideration of whether the lower court appropriately addressed appellant's request to set aside a fine assessed by the Federal Election Commission for some late reported donations to the campaign under the FEC's administrative fines program. And what struck me is the court below seemed to lose track of the principal issue that was raised below, or at least what I think is the principal issue that defines the case. Congress empowered the FEC to assess administrative penalties pursuant to a schedule that was quote, established and published, close quote. That delegated authority and the penalty schedule then in place expired as of December 31, 2013. In late December 2013, Congress passed an enabling statute for the stated purpose of assess administrative fines pursuant to a schedule of penalties, again quote, established and published. While the FEC published a reported adoption of a schedule of penalties, the FEC failed to establish the schedule of penalties in the first instance. The court below recognized that the question of whether the FEC appropriately established the schedule was the central issue before it, but never really addressed it. The commission, having recognized that as being the issue, now asserts it never was the issue. And further asserts there is no separate requirement for the commission to establish the schedule of penalties, only to publish it. Council, what's the prejudice to your client as to the use of the schedule when the substantive fines were exactly the same under the prior schedule and under the schedule that they followed? Admittedly, your honor, there were no changes between the schedule which had appropriately been adopted but expired. And the one which was improperly applied because it had not been adopted. But the principle question is whether our client should be subject to a penalty which was not properly enacted by the commission as directed by the enabling statute by Congress. Was there any substantive difference in the new schedule and accompanying material from the old one that would have created some kind of a notice issue, some kind of issue to you that would have made it unfair? Your honor, there was, I'm sorry if I interrupted you. No, there was no substantive difference between the schedule which was appropriately adopted and the one which was applied which wasn't adopted. So why wouldn't it be reasonable to assume that a formal comment and notice provision that is typically applicable for administrative rule making not really crucial in a circumstance like this? Well, your honor, it's a little bit more of a fundamental question, I believe, where Congress empowers a commission, in this instance, to establish and invoke penalties. It is a very serious delegated authority which needs to be taken seriously. And in any circumstance where an individual or an entity in a capacity acting on behalf of an entity is penalized or fined, there ought to be a legitimate basis for the entity which is assessing the penalty to assess the penalty. So essentially what we have here is an agency or the commission which has gone beyond its authority by imposing a penalty in a circumstance where the penalty never was appropriately adopted. What do you think, what do you say was required to, you say, adopt or establish, is the word in the statute, the penalty schedule that wasn't done? There needed to be action undertaken by the commission to establish the penalty structure, not simply to publish it. We don't have rule making and penalty establishment by publication. What do you say they were required to do? They were required to enact, adopt the schedule at a meeting where they would have voted in collegia, in public, to establish the schedule which would then be published. And they didn't do that here. Are there any recognized exceptions to that process? There are exceptions to their process generally, but only in the context of routine matters, which are administrative matters. Why wouldn't this be pretty routine since it didn't change anything substantive? Well, a couple of points there. I can't agree that it's routine for an entity or a commission to establish penalties which are then imposed. The question of imposing penalties on an individual itself might be considered routine, but the adoption of the penalties themselves that are applied cannot be considered routine. As a point in fact, the commission knows how to do this and how to do it properly. When the circumstance arose in 2005 where the enabling statute and authority was set to expire, the commission acted at a public meeting in collegia and voted to adopt and continue the program and the schedule. They then, at that point in time, published what they had done in the appropriate forum. What do you say is the source of the requirement that they have a public meeting in collegia? Are you relying on the Administrative Procedures Act or the federal election statute? What are you relying on? It's not the federal election statute. I'm going to have to give that some thought, Your Honor. It is the practice of procedure. Your whole case is they were required to have a meeting in collegia, as I understand it. All I'm asking is what's the source of the requirement that they do it? What they do by practice and what they did in 2005 when they did this previously. They did it in public. Well, if your only argument is they've done it this way before, therefore they're required to do it again, that's your position? There's no statutory requirement? I believe there is statutory authority. I believe it is under the Administrative Procedures Act. I can't represent to the court that that is the case. I do believe the Administrative Procedures Act or the Sunshine Law Act, excuse me, may have provided a basis for them to have to do it. I apologize for not being focused on that point. But there is a requirement that it be done in open public. Counsel, you're in your rebuttal time. You can continue if you like or you can reserve. I would reserve. Mr. Bonham. Good morning. May it please the court, Robert Bonham for appellees, the Federal Election Commission and its chair. It is undisputed in this case that the required 48 hour notices were not filed by the committee before the 2014 primary election. Go ahead and finish that and then I have a procedural question. I'll respond to your question first. These penalties, how does the commission decide that somebody has violated this provision? There's somebody in the Federal Election Commission who decides that maybe this has happened and they present some evidence to a group of six. And if there are four of them that say that it's wrong, that's when you move forward with your procedure here in a case like this? Correct, Your Honor. It's a multistep process. In this case, there was a challenge and he can either pay it and I guess so that they have to prove that they didn't do what you have accused them of. And if you don't do that, you pay a $12,000 fine as in this case. Is that right? Correct, Your Honor. Yes. And that passes due process? Yes. The reporting requirements of the act are strict liability violations. You're switching the burden of proof from the accuser to the accused to prove that they didn't violate instead of the FEC having to establish that they did violate the act. As I read pages six, seven, I guess this is your brief. Is that right? The factual underpinning of the violation is whether or not reporting was required and whether or not the report was actually filed properly and on time. Here the issue... What's in dispute here is a $12,000 fine, isn't it? The principal issue in this case is the commission's authority under its administrative fines regulations. And under the Constitution, you have to put the Constitution in play here too, don't you? Yes, Congress authorized the administrative fines program in 2000. The commission immediately issued implementing regulations. Congress can't authorize something that's a violation of the Constitution, can they? I mean, you're charging these people $12,000 for what they purportedly didn't do here and they have to prove that they didn't do it. All you have is just, what do you call it, a reason to believe. Is that right? The commission's enforcement authority has been upheld on numerous occasions in the past. You say the commission determines that it has a reason to believe that the respondent has violated the statute and upon notification then the respondent pays the penalty or what happens then if they don't pay the penalty? Possible collection proceedings. Let me put this in context, if I may, though. Since the 1970s, the enforcement process has been a similar, even more complicated procedure. The commission, either on the basis of information in its own possession or from an administrative complaint, makes a preliminary reason to believe determination. There's an opportunity to respond and in the ordinary administrative enforcement process, the commission then makes a probable cause to believe determination. If the commission finds probable cause to believe there is a mandatory conciliation period and at the end of that conciliation period, if there is not an agreement reached, the commission may make a determination to file a civil enforcement suit in federal court over the violations. It would be at that point that the culprit can prove that they hadn't made the violation? Throughout the administrative process, the respondents can submit facts and also legal arguments and the case is in federal court would be de novo. The procedure here, though, is slightly different. After the initial reason to believe determination, the commission can decide to handle routine enforcement matters like this through its administrative fines procedure and that's what happened in this case. An independent person on the commission staff reviews the RTE finding and reviews the challenge, if any, prepares his or her recommendations to the commission and then provides that to the respondents. The respondents have an opportunity to respond and the commission then makes a vote whether or not to make a final determination and assess the penalty. In this case, the appellants have challenged the commissions altogether based upon the argument they make that the regulations were improperly extended. Yes, so what do you say to the argument that the schedule was not properly established because there was not a meeting collegia of the commissioners? Congress has reauthorized the fines program several times and twice in its history, the commission has considered the issue of extending the regulations at an open meeting and, in fact, has voted in an open meeting. In neither of those instances was there notice and comment and there also was an immediate effective date. Three times in the commission history, a commission has used the procedure that was utilized in this case. This is voted on a notational basis after the circulation of a document making recommendations. The commission's sense on regulations in their definition of a meeting specifically exempt this in circulation in notational voting procedure. Appellants have suggested there is some statutory or the authority requiring a meeting however, neither the APA, the Sunshine Act, or the Federal Election Commission require a meeting in this circumstance. Will you? In this case, the commission's waiver of notice and comment and also waiver of a 30-day time period after its decision on the regulations squarely falls within the good cause exception. As was discussed a moment ago, there was no prejudice. There was no unfairness in the regulations immediately going back into effect. It was important for the commission at that time to act quickly. There had been a special election and there were some reports to do in early January that otherwise, if the regulations had not been extended, would have gone into the commission's ordinary air administrative enforcement process. There was also a special election, I believe in Florida, coming up as well. And committees also have monthly reports that would start being due in February. If the court has no further questions, I will ask. Your procedure is set forth here on page 7 of your red brief, isn't it? Yes. If the court has no further questions, I will ask that you from the judgment of the district court and sustain the FEC's decision in this case. Thank you, Mr. Bottom. Mr. Griffin, your rebuttal. Thank you, your honors. Judge, I'd like to come back to your question as I presumed you thought that I would in terms of the authority or the requirement for an open public meeting. The analysis is twofold. Statutorily, the delegated authority is for the commission to establish and publish. That in my mind is clear within the language of both the enabling statute and the statute which was passed in the end of 2013, which extended the authority for them to then establish and publish. Then the question to you is why does it have to be in the open meeting? It's pursuant to the fact that it's a federal agency subject to the Sunshine Laws, Sunshine Act, and because the commission's own internal procedures and rules require that the commission business be conducted in collegiate, in public, in open, in an open event. The exceptions would be that have been recognized that have been articulated here is an exception based on the tally voting or notational procedure, which has its application though only in the context of routine matters. The establishment of penalties is not and cannot, in my view, be considered a routine matter. Historically, in 2005, when the commission renewed them again, they renewed them during an open meeting where the minutes reflect that it was voted upon and they identified that there were no routine matters before the commission at all. I just don't understand how it can be the case that the enactment of the procedures or the penalties, which then get applied subject to their discretion, could be considered routine in any material respect. If, in fact, they were able to follow the tally procedure, they didn't do it appropriately. They did not receive back the appropriately completed ballots. They weren't tallied. They weren't certified under seal by the clerk. In that respect, if they had an obligation or an ability to avoid the obligation to do something in open meeting in terms of establishing the penalties, which they needed to do, they did not comply with the tally notational voting requirement in the first instance. Accordingly, we would argue that the commission was without authority to assess the penalties in this instance because they had not been appropriately established and the matter should be remanded to district court for disposition along those lines. Thank you, Mr. Griffin. Thank you very much. The court thanks both counsel for the argument you provided to the court this morning, the briefing that you've submitted also, and we'll take the case under advisement. Madam clerk, I believe we have one more case for the morning. Yes, sir. The last case for argument is Box versus Werner Enterprises.